UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH PAESANO and ANTHONY PAESANO,<br><br>Plaintiffs,<br><br>v.<br><br>ETHICON, INC.; ETHICON WOMEN'S HEALTH & UROLOGY, a Division of Ethicon, Inc.; GYNECARE; JOHNSON & JOHNSON; DR. ROBERT LOBEL, M.D., NORTHEAST UROGYNECOLOGY, PELVIC MEDICINE and RECONSTRUCTIVE SURGERY P.C., and JOHN DOES 1-20,<br><br>Defendants. | Civil Case No. 7:19-cv-10979 |

NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendants ETHICON, INC. (on its own behalf and on behalf of its division, Ethicon Women's Health & Urology, formerly Gynecare, which are improperly named in the Complaint as separate entities) and JOHNSON & JOHNSON (collectively, "Removing Defendants"), by and through undersigned counsel, hereby remove this action from the Supreme Court of the State of New York, County of Dutchess, to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

The United States District Court for the Southern District of New York has original subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity among all properly joined and served parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Under 28 U.S.C. § 1441(b), no party properly joined and served as a defendant in this action is a citizen of New York, the state in

which this action was filed. Further, the citizenship of Defendants Robert Lobel, M.D. and Northeast Urogynecology, Pelvic Medicine and Reconstructive Surgery P.C. ("the Physician Defendants") should be ignored, as these defendants are fraudulently joined.

In support of removal, Removing Defendants further state:

1. On September 24, 2019, Deborah Paesano and Anthony Paesano ("Plaintiffs") filed a Complaint in the Supreme Court of the State of New York, Dutchess County, titled *Paesano, et vir v. Ethicon, Inc., et al.*, Index No. 2019-53862.

2. On September 25, 2019, Plaintiffs filed an Amended Complaint. *See* Complaint ("Am. Compl."), Ex. A.

3. Plaintiffs allege that on January 19, 2009, Ms. Paesano "underwent the implantation of an Ethicon Pelvic Mesh Product" by defendant Dr. Robert Lobel, who "employed Gynemesh." (Am. Compl. ¶ 86.) Plaintiffs do not specify which Ethicon product(s) are alleged to have been implanted. Plaintiffs allege that "[a]s a direct and proximate result of the use of the Ethicon Pelvic Mesh Products, Plaintiff suffers, and continues to suffer, serious bodily injury and harm, including, but not limited to, severe and debilitating pain, and dyspareunia which has led to the necessity for surgical removal of the Ethicon Pelvic Mesh Products." (Am. Compl. ¶ 93, p. 27.) Against Defendants Johnson & Johnson, Ethicon, Inc., and Ethicon Women's Health & Urology only, Plaintiffs assert claims for negligence and punitive damages. (Am. Compl. ¶¶ 107-110, pp. 29-31; ¶¶ 235-250, pp. 60-62). Against only Dr. Lobel and his practice, Northeast Urogynecology, Pelvic Medicine and Reconstructive Surgery P.C., Plaintiffs assert a claim for lack of informed consent. (Am. Compl. ¶¶ 103-106, pp. 28-29). Plaintiff asserts claims under strict products liability, fraud, and New York's Consumer Protection Laws against all Defendants. (Am. Complaint ¶¶ 111-234, pp. 31-59).

4. This case is removable under 28 U.S.C. § 1441(b)(2) because no defendant who is "properly joined and served" is a citizen of the State of New York.

## I.     <u>REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL</u>

5. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon and by Removing Defendants related to this action is attached as Exhibit "A."

6. Dutchess County is located within the Southern District of New York, *see* 28 USC § 112(b), and, venue for this action is proper in this Court under 28 U.S.C. § 1441(a) because the Southern District of New York is the "district and division embracing the place where such action is pending."

7. The Physician Defendants received a copy of the Summons and Complaint on October 4, 2019.

8. Defendants Ethicon, Inc., Ethicon Women's Health & Urology, Gynecare, and Johnson & Johnson received a copy of the Summons and Amended Complaint on November 1, 2019. (Exhibit A.) This Notice of Removal is being filed within 30 days of the first date on which the Removing Defendants received a copy of the complaint through service or otherwise. Therefore, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).

9. No previous application has been made for the relief requested herein.

10. Immediately following the filing of this Notice of Removal, written notice of the filing of this Notice will be delivered to Plaintiffs' counsel, as required by 28 U.S.C. § 1446(d).

11. Defendants will promptly file a copy of this Notice with the Clerk of Court in the Supreme Court of the State of New York, Dutchess County, as required by 28 U.S.C. § 1446(d).

12. The consent of the Physician Defendants to remove this action to federal district court is not necessary because they are fraudulently joined to this proceeding for the reasons explained below. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 330 (S.D.N.Y. 2007) ("there are exceptions to [the rule of unanimity] for defendants who have not been served, unknown defendants, and fraudulently joined defendants.").

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332(A)

13. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A. The Amount in Controversy Requirement Is Satisfied

14. Pursuant to 28 U.S.C. § 1446(c)(2)(B), removal is proper if the court finds, by the preponderance of the evidence, that the amount in controversy exceeds $75,000.00.[1]

15. It is facially evident from the Complaint that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006); *Davenport v. Procter & Gamble*, 241 F.2d 511, 514 (2d Cir. 1957). A removing defendant need only show "a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount" of $75,000.00. *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994).

16. Plaintiffs allege that Ms. Paesano was implanted with a mesh product and thereby suffered "serious bodily injury and harm" including "severe and debilitating pain and dyspareunia which has led to the necessity for surgical removal of the Ethicon Pelvic Mesh Products." (Am. Compl. ¶ 93, p. 27.) In addition, Plaintiff alleges "suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium." (Am. Compl. ¶ 110, p. 31.) She alleges that she has "incurred, and continues to incur medical expenses to treat her injuries and condition" and "is anticipated to undergo further surgeries to remove more of the

---

[1] The preponderance of the evidence standard was reaffirmed in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. According to the House Report accompanying the bill, "circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied. The 'sum claimed' and 'legal certainty' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it." H.R. Rep. No. 112-10, at 15 (2011). Accordingly, "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 16.

mesh." (Am. Compl. ¶¶ 94-95, p. 27.)  Based on these allegations of permanent and disabling injuries requiring multiple additional surgeries, it is plain that considering these allegations alone, the amount in controversy of $75,000.00, exclusive of interest and costs, is met on the face of the complaint.

17. Plaintiffs also seeks punitive damages from the Removing Defendants.  (Am. Compl. ¶¶ 235-250, pp. 60-62.)  "In determining the amount in controversy, the Court may also consider bona fide claims for punitive damages." *Miller v. European American Bank*, 921 F. Supp. 1162, 1167 (S.D.N.Y. 1996).

18. Nowhere in the Amended Complaint do Plaintiffs limit the amount in controversy to less than $75,000.00. (*See* Am. Compl.)

19. Although Removing Defendants deny any liability to Plaintiffs, these allegations of pain and suffering, present and future medical expenses for additional surgeries, impairment, loss of earnings and earning capacity, loss of consortium, and punitive damages when taken together clearly place more than $75,000.00 in controversy.  *See*, *e.g.*, *Hammarland v. C.R. Bard, Inc.*, Case No. 2:15-cv-05506-SVW-JEM, 2015 WL 5826780, at *2 (C.D. Cal. Oct. 2, 2015) (denying remand in case involving hernia-mesh product and citing cases "involving severe injuries, especially those requiring surgery," in which "courts have found it facially apparent from the complaint that the amount in controversy is satisfied"); *Cole v. Medtronic*, Civil Action No. 3:14-cv-381-DJH, 2015 WL 1638439, at *3 (W.D. Ky. Apr. 13, 2015) (finding that "the Court is confident that the case involves more than $75,000" given the "serious, complex, and expensive to treat" nature of plaintiff's alleged injuries and the potential for a large award of punitive damages); *In re Rezulin Prods. Liab. Litig.*, 133 F.Supp.2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *Boudreaux v. Daimler Chrysler Corp.*, No. Civ. A. 00-2054, 2001 WL 290157, at *3 (E.D. La. Mar. 22, 2001) (holding that "alleged damages can

5

easily support the requisite monetary basis for federal jurisdiction" where plaintiff sought compensation for medical expenses, pain and suffering, mental anguish, and lost wages).

20. Because Plaintiffs' Amended Complaint sets forth general personal injury allegations in addition to a claim for punitive damages, there is a reasonable probability that the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.[2]

### B. Complete Diversity of Citizenship Exists Between Plaintiffs and the Properly Joined Defendants

21. Complete diversity exists under 28 U.S.C. § 1332(a) because no properly joined and served Defendant is a citizen of the same state as Plaintiffs.

22. Plaintiffs are alleged to be residents and, upon information and belief, citizens of the State of New York. (Am. Compl. ¶ 3.)

23. For purposes of determining its citizenship under 28 U.S.C. § 1332(c)(1), Defendant Johnson & Johnson is a citizen of the State of New Jersey because it is incorporated under the laws of the State of New Jersey and has its principal place of business in New Brunswick, New Jersey.

24. For purposes of determining its citizenship under 28 U.S.C. § 1332(c)(1), Defendant Ethicon, Inc. is a citizen of the State of New Jersey because it is incorporated under the laws of the State of New Jersey and has its principal place of business in Somerville, New Jersey.

25. Ethicon Women's Health & Urology has been sued as a Division of Ethicon, Inc. "[U]nincorporated divisions of a corporation lack legal capacity to be sued." *EEOC v. St. Francis Xavier Parochial Sch.*, 77 F. Supp. 2d 71, 75 (D.D.C. 1999).

---

[2] In the event that Removing Defendants' amount-in-controversy is challenged by Plaintiffs or questioned by the Court, Removing Defendants must be given an opportunity to submit proof supporting its allegation, and the Court must then determine, by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).

26. Gynecare, Inc., no longer exists. Ethicon, Inc. acquired Gynecare, Inc., a business corporation organized under the laws of the State of Delaware with its principal place of business in California, on November 19, 1997. Gynecare, Inc. was merged out of existence and into Ethicon, Inc. on January 3, 2000. Accordingly, Gynecare, Inc. is a non-juridical entity that cannot sue or be sued in its own capacity. To the extent Plaintiffs sue Gynecare as a division of Ethicon, Inc., an unincorporated division may not be sued. *See EEOC*, 77 F. Supp. 2d at 75.

27. As explained below, the citizenship of Defendants Robert Lobel, M.D. and Northeast Urogynecology, Pelvic Medicine and Reconstructive Surgery P.C. should be ignored because these non-diverse Defendants are fraudulently joined in this action.

### 1. **The Physician Defendants are Non-Diverse Defendants Whose Claims are Fraudulently Joined.**

28. Plaintiffs "may not defeat diversity jurisdiction by improperly joining a non-diverse defendant with no genuine connection to the matter." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011) (quoting *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010)). Known as the "doctrine of fraudulent joinder," this rule "is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction. *Bounds*, 592 F.3d at 215 (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004)). Under this doctrine, courts should overlook the presence of a non-diverse defendant "if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Id.*

29. Joinder of a non-diverse defendant with no real connection with controversy cannot defeat "a federal court's diversity jurisdiction and a defendant's right of removal." *Pampillonia*, 138 F.3d at 460-61.

7

### 2. **Plaintiffs Do Not Have A Colorable Claim Against Non-Diverse Physician Defendants.**

30. Pursuant to CPLR 214-a, an action for medical malpractice must be commenced within two years and six months of the act, omission, or failure complained of by the patient.

31. Plaintiffs allege that Ms. Paesano had "an Ethicon Pelvic Mesh Product" implanted on January 19, 2009. (Am. Compl. ¶ 86.)

32. Plaintiffs allege that prior to January 19, 2009, Dr. Lobel discussed with Ms. Paesano "common risks of the procedure" but failed to apprise her of "issues that might arise due to his use of Gynemesh or other Pelvic Mesh Product." (Am. Compl. ¶ 87.)

33. Specifically, Plaintiffs allege that Dr. Lobel failed to adequately inform them "of the nature, purpose, known perils, recognized hazards, risks and/or possible complications of the medical diagnosis, treatment, services and advice rendered to the Plaintiff, thereby failing to obtain an informed consent from, or on behalf of, the Plaintiffs regarding the outcome or possible consequences of the medical diagnosis, treatment, services and advice rendered to Plaintiff." (Am. Compl. ¶ 104.) Plaintiffs further assert that "the lack of said informed consent is a proximate cause of the injuries or conditions for which recovery is sought." (Am. Compl. ¶ 105.)

34. The latest date by which Dr. Lobel allegedly could have failed to obtain an informed consent from Ms. Paesano is January 19, 2009 – the date Ms. Paesano underwent the procedure. Plaintiffs did not file their Complaint until September 24, 2019. (*See* Am. Compl., Ex. A.) More than ten (10) years have elapsed between the latest possible date of the alleged acts of medical malpractice and lack of informed consent and the commencement of this action. *See Peykarian v. Yin Chu Chien*, 109 A.D.3d 806, 807 (2d Dept. 2013) (finding medical malpractice and lack of informed consent claims against doctor were time-barred.)

35. Because Plaintiffs did not file their lack of informed consent claim against Dr. Lobel and Northeast Urogynecology, Pelvic Medicine and Reconstructive Surgery P.C. within

two years and six months of January 19, 2009, this claim is time-barred pursuant to CPLR 214-a. As such, there is no possibility that this claim could be asserted in state court.

36.     As to the remaining claims that are asserted against the Physician Defendants, similarly, there is no possibility that these claims could be asserted by Plaintiffs in state court.

37.     In addition to the claim for lack of informed consent (Count I) against the Physician Defendants, Plaintiffs have asserted claims for strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), strict liability – defective product (Count V), strict liability – design defect (Count VI), common law fraud (Count VII), fraudulent concealment (Count VIII), constructive fraud (Count IX), negligent misrepresentation (Count X), negligent infliction of emotion distress (Count XI), breach of express warranty (Count XII), breach of implied warranty (Count XIII), violation of State consumer protection laws (Count XIV), gross negligence (Count XV), unjust enrichment (Count XVI), and loss of consortium on behalf of Plaintiff Anthony Paesano (Count XVIII). (Am. Compl. pp. 28-63.).  Only the claims for strict liability – manufacturing defect and loss of consortium claims are explicitly asserted against both Removing Defendants and the Physician Defendants; however, the Complaint refers to Removing Defendants and the Physician Defendants collectively as "Defendants" throughout the remaining causes of action.

38.     These remaining claims are not proper claims against the Physician Defendants. Dr. Lobel and Northeast Urogynecology, Pelvic Medicine and Reconstructive Surgery P.C. have never manufactured, designed, labeled, packaging, tested, marketed, or sold Ethicon Mesh Products.  To this end, New York Courts have held that "a physician who uses a product in the course of medical treatment is not a 'seller' of that product." *Detwiler v. Bristol-Myers Squibb Co.*, 884 F. Supp. 117, 121 (S.D.N.Y. 1995).

39.     The causes of action contained in Counts III – XVI of the Complaint should be properly considered claims against Removing Defendants alone. *See In re Diet Drugs Prods. Liab. Litig.*, 220 F. sup. 414, 424 (E.D. Pa. 2002) (defendants fraudulently joined where the

complaints were "devoid of specific allegations against the pharmacies" and were "filled instead with general statements levied against all defendants, which most properly can be read as stating claims against drug manufacturers"); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001) ("Although plaintiffs' complaint commonly employs the generic term 'defendants,' the context and nature of the individual allegations make clear that only the drug companies are targeted."). The factual allegations supporting these claims do not support a conclusion that such claims are being asserted legitimately against both Removing Defendants and the Physician Defendants; on the contrary, they belie such a conclusion.

40. For example, to support their claim for strict liability – manufacturing defect, Plaintiffs allege that "Defendants" collectively "deviated materially from their design and manufacturing specifications and/or such design and manufacture posed an unreasonable risk of harm to Plaintiff(s)." (Am. Compl. ¶ 112). Yet Plaintiffs present no factual allegations establishing that the Physician Defendants actually designed or manufactured the product in question. Additionally, to support their fraud, breach of warranty, and consumer fraud claims, Plaintiffs allege that "Defendants" collectively misrepresented certain information to Plaintiffs *and* their healthcare providers. *See*, *e.g.*, *id.* ¶¶ 137, 192, 221. The Physician Defendants cannot have misrepresented information to themselves, and other courts have found fraudulent joinder based on similarly contradictory allegations against non-diverse defendants. *Omobude v. Merck & Co.*, No. 3:03CV528LN, 2003 U.S. Dist. LEXIS 27006, at *5-6 (S.D. Miss. Oct. 3, 2003) (physician fraudulently joined where plaintiff alleged that "Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about Vioxx"); *Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV-802-A, slip op. at 4 (N.D. Tex. Sept. 26, 2003) (attached as Exhibit "B") (finding doctors fraudulently joined and denying remand where plaintiffs had alleged misrepresentation against a drug manufacturer that "negate[d] any possible liability of the physicians"); *In re Baycol Prods. Litig.*, No. 03-4954, 2004 WL

1118642, at *2 (D. Minn. May 17, 2004) (the plaintiffs' claim that the medical defendants failed to warn them of risks associated with the prescription medication Baycol failed as a matter of law when the plaintiffs also specifically alleged that Baycol's manufacturer failed to warn doctors and hospitals (i.e., the medical defendants) that "there were specific risks associated with [the medication]'"); *Flores v. Merck & Co.*, No. C-03-362, 2004 U.S. Dist. LEXIS 28017, at *3 (S.D. Tex. March 12, 2003) (denying motion to remand and finding the prescribing doctor fraudulently joined "when the plaintiffs' own petition states that [the doctor], as a member of the health care industry, was not made aware of the risks of the ingestion of the drug."); *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 763 (S.D.W.V. 2003) (finding that prescribing doctor was fraudulently joined when plaintiff alleged that the doctor should have known of the dangers of the medication at issue while also alleging that the manufacturer prevented anyone from knowing those dangers); *In re Rezulin Products Liab. Litig.*, 133 F. Supp. 2d 272, 290 (S.D.N.Y. 2001) (noting that the "the theory underlying the complaint is that the manufacturer defendants hid the dangers of Rezulin from plaintiffs, the public, physicians, distributors, and pharmacists - indeed, from everyone. Plaintiffs' allegations that pharmacists knew and failed to warn of the dangers therefore are purely tendentious."

41.     While Plaintiffs refer to Removing Defendants and the Physician Defendants collectively as "Defendants" throughout the Complaint, they have not alleged any specific activity on the part of the Physician Defendants that plausibly establishes claims for product liability, fraud, breach of warranty, or consumer fraud, against them.  Numerous other courts have held that such use of boilerplate allegations against all "Defendants" collectively, as Plaintiffs have done here, amounts to fraudulent joinder.  *See Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 391-93 (5th Cir. 2000) (affirming finding of fraudulent joinder where plaintiffs' claims merely referred to "defendants" collectively and where plaintiffs failed to allege any "particular or specific activity" on the part of non-diverse defendants); *Jankins v. Bayer Corp.*, No. 3:10-cv-20095-DRH-PMF, MDL No. 2100, 2010 U.S. Dist. LEXIS 59175, 2010 WL 2402926 (S.D. Ill.

June 15, 2010) (holding McKesson Corporation fraudulently joined where there was no allegation that McKesson provided the specific drug at issue and plaintiff's "boilerplate allegations as to 'Defendants'" did not state a claim against McKesson); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (holding that where allegations are made against multiple defendants, "plaintiff must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)"); *Harrison v. Adams*, No. 1:08-cv-01065-YNP PC, 2010 WL 711939, at *2 (E.D. Cal. Feb. 25, 2010) (dismissing complaint because it "lump[ed] all Defendants together" and noting that "Defendants are not sued collectively and each Defendant is only liable for the injuries that their own actions cause"); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 & n.10 (S.D.N.Y. 2001) (denying remand where "plaintiffs make no specific allegations against [the nondiverse defendant] at all, instead [they] attribut[e] wrongdoing to the collective 'defendants'"); *Oshima v. Kia Motors Corp.*, 2012 U.S. Dist. LEXIS 63086, 2012 WL 578397 (D. Colo. May 4, 2012) (global allegations against defendants collectively were "[in]sufficient to 'raise a right to relief beyond the speculative level"); *Lacey v. DePuy Orthopaedics, Inc.*, 2012 U.S. Dist. LEXIS 74466, 13 (N.D. Ohio May 30, 2012); *Banger ex rel. Freeman v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 638 (S.D. Miss. 2002) (conclusory and generic allegation of wrongdoing on part of all defendants is "not sufficient to show that [non-diverse] defendant was not fraudulently joined"); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001) (denying motion to remand where complaint "commonly employs the generic term 'defendants'"); *Lyons v. Am. Tobacco Co.*, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (there is "no better admission of fraudulent joinder" than plaintiffs' failure to make any specific factual allegations against these non-diverse defendants").

42.   For the foregoing reasons, there is no reasonable probability that the Physician Defendants would be found liable for the medical malpractice, product liability, and consumer

protection claims asserted against them. Accordingly, their presence may be ignored under the doctrine of fraudulent joinder because "there is no possibility that the claims against [these defendants] could be asserted in state court." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

43. Jurisdiction in the Southern District of New York is properly invoked on the basis of complete diversity of the parties because, both at the time this suit was commenced in state court and at the time of removal, the Removing Defendants were and are citizens of New Jersey. and Plaintiffs were and are citizens of New York.

44. Because the Physician Defendants are fraudulently joined in this action in order to defeat diversity, their presence may be ignored for purposes of this Court's subject matter jurisdiction. *See Pampillonia,* 138 F.3d at 460-61.

45. By removing this action to this Court, Removing Defendants do not waive any defenses, objections, or motions available to them under state or federal law. Removing Defendants expressly reserve the right to move for dismissal of some or all of Plaintiffs' claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.

WHEREFORE, Defendants Ethicon, Inc. and Johnson & Johnson give notice that the matter bearing Index No. 2019-53862 in the Supreme Court of the State of New York, County of Dutchess is removed to the United States District Court for the Southern District of New York.

DATED:  November 27, 2019

Respectfully submitted,

DEFENDANTS ETHICON, INC.
AND JOHNSON & JOHNSON

By: */s/ Maha M. Kabbash*
    Maha M. Kabbash (Federal Bar No. MK0163)
    Riker Danzig Scherer Hyland & Perretti, LLP
    Headquarters Plaza
    One Speedwell Avenue
    Morristown, NJ 07962-1981
    Phone: (973) 451-8417
    Fax: (973) 451-8635
    mkabbash@riker.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. A copy of the foregoing was also served via email on the following counsel:

Thomas G. Cascione, Esq.
Cascione, Purcigliotti & Galluzzi P.C.
274 White Plains Road, Suite 6
Eastchester, NY 10709-4419

Attorneys for Plaintiffs Deborah Paesano and Anthony Paesano

Shawn F. Brousseau, Esq.
Napierski, Vandenburgh, Napierski & O'Connor, LLP
296 Washington Avenue Ext., Suite 3
Albany, NY 12203

Attorneys for Defendants Robert Lobel, M.D. and Northeast Urogynecology, Pelvic Medicine & Reconstructive Surgery, P.C.

*/s/ Maha M. Kabbash*
Maha M. Kabbash